IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   12-cv-01428-WYD

HOLLY KAY GONZALEZ,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration[1],

    Defendant.

# ORDER

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for disability insurance benefits and supplemental security income benefits.  For the reasons stated below, this case is reversed and remanded to the Commissioner for further fact finding.

I.   BACKGROUND

Plaintiff, born on March 21, 1968, protectively filed for disability insurance benefits and supplemental security income benefits in April 2007, alleging disability since June 29, 2006, due to mental impairments.  (Transcript ["Tr."] 121-128.)  After her application was denied (*id*. 41-48), Plaintiff requested a hearing before an administrative law judge ["ALJ"].  (*Id*. 49.)  A hearing was held (*id*. 23-40), and the ALJ issued a decision in March 2010

---

[1] Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant pursuant to Fed. R. Civ. P. 25(d).

finding that Plaintiff was not disabled at step five of the sequential evaluation required by law. (*Id.* 10-18.)

More specifically, at step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 29, 2006, the amended alleged onset date. (Tr. 12, Finding 2.)[2] At steps two and three, he found that Plaintiff had severe mental impairments of post traumatic stress disorder ["PTSD"] and depression, but that she did not have an impairment or combination of impairments that met or equaled a listed impairment. (*Id.* 13, Findings 3 and 4.)

The ALJ then assessed Plaintiff's residual functional capacity ["RFC"], and found that she could perform a range of unskilled, low-stress work with limited interaction with other people. (Tr. 14, Finding 5.) He further found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the RFC. (*Id.* 15.)

At step four, the ALJ found that Plaintiff could not perform her past relevant work. (Tr. 17, Finding 6.) At step five, relying on testimony of a vocational expert ["VE"], the ALJ found that Plaintiff could perform other work existing in significant numbers in the national economy, including industrial sweeper, housekeeping cleaner, and sewing machine operator. (*Id.* 18, Finding 10.) Thus, the ALJ found that Plaintiff was not disabled under the Act. (*Id.*, Finding 11)

---

[2] Plaintiff initially alleged an onset date of August 31, 2003, but amended it to June 29, 2006, the date she stopped abusing alcohol. (Tr. 10, 32-33, 35.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. § 422.210(a). Plaintiff timely requested judicial review, and this appeal followed.

II.  ANALYSIS

A.  Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

B.  Whether the ALJ's Decision Should Be Reversed

Plaintiff first argues that the ALJ erred by giving undue weight to the opinion of the nonexamining state agency physician and not explaining how that opinion outweighed the opinions of the treating and examining physicians. Plaintiff also argues that the ALJ failed

to properly weigh the other medical opinions, and gave invalid reasons for rejecting or giving little weight to those opinions. I agree, and find that this case must be remanded for a proper weighing of the medical evidence.

An ALJ is "required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'" *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quotation omitted)). "The opinion of an examining physician or psychologist is generally entitled to less weight than that of a treating physician or psychologist, and the opinion of an agency physician or psychologist who has never seen the claimant is generally entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

In the case at hand, the ALJ gave "significant weight" to the opinion of Ellen Ryan, M.D., the nonexamining state agency physician. Dr. Ryan opined that Plaintiff can perform work needing little judgment and simple tasks learned in approximately 1 month. (Tr. 419.) She further opined that Plaintiff can interact with supervisors and coworkers, but should have less contact with the public. (*Id.*) Finally, she opined that Plaintiff has had one or two episodes of decompensation, each of extended duration, and has moderate limitations in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an

unreasonable number and length of rest periods, and the ability to interact appropriately with the general public.  (*Id.*, 417-418, 431.)

Dr. Ryan's opinion is the least restrictive as to Plaintiff's impairments and capacity to work.  The examining and treating medical sources all opined as to more significant restrictions.  Yet the ALJ gave the most weight to this opinion, without providing any rationale for his decision.  This is reversible error.  "If an ALJ intends to rely on a nonexamining source's opinion, he must explain the weight he is giving it." *Robinson*, 366 F.3d at 1084 (citing 20 C.F.R. § 416.927(f)(2)(ii)).  Moreover, the ALJ failed to state why the opinion of Dr. Ryan, a nonexamining, non-treating state agency physician, outweighed the opinions of Plaintiff's treating and examining sources.  *See Lee v. Barnhart,* 117 F. App'x 674, 687 (10th Cir. 2004) (an ALJ's reliance on an agency medical consultant's opinion is reasonable only insofar as that opinion is supported by evidence in the case record) (citing SSR 96-6P, 1996 WL 374180, at *2).  This is particularly problematic given the fact that Dr. Ryan did not have access to the opinions of treating mental health counsel Mr. Leeman and examining physician Dr. Vega when rendering her opinion.

I also find that the ALJ erred as he did not include the moderate limitations imposed by Dr. Ryan, or provide any explanation of this.  This is despite the fact that he found at step three of the sequential evaluation that Plaintiff has moderate difficulties with regard to concentration, persistence or pace as well as in activities of daily living and social functioning. (Tr. 13.)  The ALJ also found at step three that Plaintiff experienced no episodes of decompensation which have been of extended period (*id.*), contrary to Dr. Ryan's finding that Plaintiff had experienced one or two such episodes.

While "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question, '[a]n ALJ is not entitled to pick and choose through an uncontroverted medical opinion, taking only the parts that are favorable to a finding of nondisability.'" *Chapo v. Astrue*, 682 F.3d 1285, 1288, 1292 (10th Cir. 2012) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)).  Thus, an ALJ cannot, as here, discount a portion of a medical provider's findings "with no explanation at all as to why one part of h[er] opinion was creditable and the rest was not." *Id.*

I reject the Commissioner's argument that the moderate limitations did not need to be included. The Tenth Circuit has made clear that the existence of a moderate impairment is not the same as no impairment at all, and that the ALJ must explain if he rejects moderate restrictions or accepts some but not others. *Haga*, 482 F.3d at 1208. Just as in *Haga*, the RFC imposed by the ALJ did not take into account many of the moderate restrictions imposed by Dr. Ryan. This includes, significantly, the moderate impairment in "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 418.) Moreover, the ALJ erred by not including these restrictions in the hypothetical question.

In so ruling, I find instructive the case of *Bowers v. Astrue*, No. 07-5114, 2008 WL 794853 (10th Cir. March 26, 2008) (unpublished). In *Bowers*, the Tenth Circuit found error with a hypothetical question that assumed simple work that was low in stress and brief in interactions with others was appropriate where the claimant was found to be seriously

impaired in her ability to concentrate and pay attention for extended period and moderately impaired in eight other areas. *Id.* at *2-3. The court stated that simple work "can be ruled out by a vocational expert on the basis of a serious impairment in concentration and attention." *Id.* at *3. It also stated:

> Bower's eight moderate impairments may also have decreased her ability to perform that sort of work. *Cf.* S.R. 96–9P, 1996 WL 374185, at *9 (indicating that even "[a] less than substantial loss of ability to perform" a basic work activity in unskilled, sedentary labor may erode the occupational base). We take particular note of her moderate impairment in responding appropriately to changes in a routine work setting, which is a general requirement for unskilled work. *See id.* We also recognize her moderate impairments in understanding, remembering, and carrying out detailed instructions. Although processing detailed instructions is generally not a component of unskilled work, *see id.,* the two jobs specifically identified by the VE assume the ability to carry out written and oral instructions.

*Id.; see also Chapo*, 682 F.3d at 1290 n. 3 (finding that a reduction to unskilled work only accounts for issues of skill transfer, not impairments of mental functions; and that it is "doubtful" that a "restriction to 'simple' work' . . . would have been sufficient to capture the various functionally distinct mental limitations recognized" by the psychologist).[3]

I also find error with the ALJ's weighing and consideration of the medical opinions of the examining and treating sources. On that issue I find instructive the Tenth Circuit's decision in *Carpenter v. Astrue*, 537 F.3d 1264, 1270 (10th Cir. 2008). There, the ALJ said he would not give a doctor's opinion controlling weight because it was "a one time evaluation." The court found that the ALJ erred because he still was "'required to consider [the doctor's] opinion' in light of the other record evidence and the factors set out in the

---

[3] If the term moderate is deemed too non-specific to be meaningful, the ALJ still should not have ignored these limitations, but rather should have quantified them in meaningful terms other than moderate. The ALJ must account, in some manner, for the limitations that were given weight. *Id.*

regulations, which the ALJ did not do." *Id.*; *see also* 20 C.F.R. §§ 404.1527(c). Here, as in *Carpenter*, the ALJ did not discuss any of the relevant factors in regard to the opinions of the examining and treating sources or consider the supportability of their opinions in light of the other record evidence.[4]

Further, I find that the ALJ erred as to the treating and examining sources because the reasons he gave for the weight assigned to their opinions are not valid. I first address the opinion of treating mental health counselor Chris Leeman, M.S., Hp.T. The ALJ stated he gave "limited weight" to Mr. Leeman's opinion that Plaintiff had moderate and marked limitations in many areas. (Tr. 16.)[5] He gave "greater weight to the slight limitations assigned" by Mr. Leeman", which he found "are consistent with the GAF score of 65 indicating only mild symptoms." (*Id.* 16.)

I find that the ALJ could not reject the moderate and marked limitations found by Mr. Leeman on the basis of his assigned GAF score (Tr. 484), as this is an improper substitution of his judgment for that of the therapist. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("an ALJ may not make speculative inferences from medical

---

[4] This ruling is not asking the ALJ to reweigh properly weighed evidence, as the Commissioner argues. Instead, I am requiring the ALJ to comply with its legal duties to properly weigh and analyze the evidence.

[5] Mr. Leeman found marked limitations in Plaintiff's ability to sustain an ordinary routine without ordinary supervision, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number or length of rest periods, the ability to ask simple questions or request assistance, the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, the ability to be aware of normal hazards and take appropriate precautions, and the ability to set realistic goals or make plans independently of others. He found moderate limitations in Plaintiff's ability to remember locations and work-like procedures, the ability to carry out short and simple instructions, the ability to maintain attention and concentration for extended periods, the ability to make simple work-related decisions, the ability to interact appropriately with the general public, and the ability to accept instructions and respond appropriately to criticism from supervisors. (*Id.* 496-97.)

reports and may reject a [medical source's] opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion*'") (emphasis in original) (quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)).  The ALJ is not trained to interpret a GAF score of 65 and its significance when compared to a report detailing Plaintiff's individual work-related functional limitations.  Further, the Commissioner has stated that GAF scores cannot be equated with the severity of a claimant's mental disorders.  65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000).  Finally, the ALJ inconsistently found that "a low GAF score, standing alone, does not necessarily evidence an impairment seriously interfering with a claimant's ability to work" (Tr. 15), while rejecting the entirety of treating counselor Mr. Leeman's report based on a lone GAF score.

The ALJ was also required to, and failed to, weigh Mr. Leeman's medical opinion using the factors set out in 20 C.F.R. § 1527(c).  While Mr. Leeman was not an acceptable medical source, a fact not referenced by the ALJ, the ALJ was still required to weigh the opinion.[6]  Indeed, "information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  SSR 06-03p, 2006 WL 2329939, at *2-4 (2006).  "[D]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable

---

[6] The Commissioner raises the fact that Mr. Leeman is not an acceptable medical source, arguing this as a post-hoc basis to affirm the ALJ's findings regarding this counselor.  The Commissioner also makes a number of other post-hoc arguments in support of the ALJ's decision.  Post-hoc arguments are improper "because [they] usurp[ ] the agency's function of weighing and balancing the evidence in the first instance".  *Carpenter*, 537 F.3d at 1267.

medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source. *Id.* at 5.

This was discussed in the case of *Frantz v. Astrue*, 509 F.3d 1299 (10th Cir. 2007), in reference to a treating clinical nurse specialist. There, the Tenth Circuit found error with the ALJ's decision to disregard the nurse specialist's overall medical opinion "in favor of opinions from two examining physicians who each saw Ms. Frantz only once and who each considered a particular aspect of Ms. Frantz's condition and found her to be capable of work, despite not having considered all of her impairments in combination." *Id.* at 1301. Similarly, here, the ALJ discounted Mr. Leeman's opinion on an invalid basis, even though it was supported by the opinions of the examining medical sources, in favor of an opinion from a nonexamining state agency physician whose opinion he ignored in part. I find that this is error that requires remand.

Next, the ALJ gave "little weight" to examining psychologist Jose G. Vega, Ph.D.'s opinion. Dr. Vega issued a GAF score of 50-55, and opined that Plaintiff suffers primarily from moderate to marked or marked to extreme limitations in all areas of mental functioning. (Tr. 491-494.) The ALJ stated he gave "little weight" to this opinion because Dr. Vega "saw the claimant one time" and "stated there were records to support his assessment but failed to identify them." (*Id.*) I find error with the reasons given for rejecting Dr. Vega's opinion.

The first reason given—that Dr. Vega only saw Plaintiff once—does not justify reducing the weight afforded to Dr. Vega's opinion. The ALJ could not reject Dr. Vega's opinion on that basis when he accepted the opinion of state agency physician Dr. Ryan

who *never* saw Plaintiff. The Tenth Circuit has stated that an ALJ cannot summarily reject a physician's opinion for containing the same defect contained in the opinion which the ALJ accepted. *Teter v. Heckler*, 775 F.2d 1104, 1106 (10th Cir.1985). Moreover, the Tenth Circuit recently stated that a limited amount of treatment by a physician "just effectively reduces them to the status of an examining-source opinion; it is not by itself a basis for rejecting them—otherwise the opinions of consultative examiners would essentially be worthless, when in fact they are often fully relied on as the dispositive basis for RFC findings." *Chapo*, 682 F.3d at 1291.

The second reason given—that Dr. Vega stated there were records to support his assessment but failed to identify them—is belied by the record. Dr. Vega stated:

> Medically, Ms. Gonzalez is being followed by the Pueblo Community Health Center by Heidi Hudson, a physician assistant. She is on medication, Vistaril for her anxiety and Ambien for her sleep. In the past, she has been followed by Spanish Peaks Mental Health Center. She reported having been seen by Dr. Schroeder. Records were submitted by Mr. Seckar from Spanish Peaks Mental Health Center supporting her self-report… Dr. Schroeder has diagnosed her with Major Depression, Recurrent; Post-Traumatic Stress Disorder; Generalized Anxiety Disorder; and Alcohol Abuse, Early Remission. Dr. Schroeder's note of 02/24/2006 on the mental status examination reports that Ms. Gonzalez reported a history of a suicide attempt in 2002.

(Tr. 489). It is unclear how Dr. Vega could have been any more specific about the medical records which support his conclusions. He mentioned not only Plaintiff's treating clinic by name, but also Plaintiff's treating providers and the specific date of the report he relied on.

Finally, consultative examiner Richard B. Madsen, Ph.D., issued a GAF score of 50 and opined that Plaintiff's level of cognitive functioning is impaired; she has difficulty

concentrating and focusing; her ability to do work-related activities is impaired; she will have difficulty maintaining a regular work schedule; she will have difficulty focusing and concentrating on work; and she will have difficulty relating to peers, coworkers, supervisors, and the general public. (Tr. 413-414.)  The ALJ stated he gave "limited weight" to Dr. Madsen's opinions, finding that they "are somewhat inconsistent with his findings. (*Id.*)  He stated as an example that Dr. Madsen indicated that Plaintiff could handle her own funds even though he noted that her ability to do arithmetic functions mentally was impaired. (*Id.*)

Again, I find that the ALJ is improperly substituting his own lay judgment for that of Dr. Madsen.  It is not necessarily inconsistent to have difficulty with arithmetic functions but still be able to manage funds.  For example, a calculator could be used to assist with the arithmetic functions.  There may be other reasons why Dr. Madsen felt that Plaintiff could manage her own funds despite her difficulty with arithmetic.  The ALJ was not entitled to judge the data for himself in rejecting Dr. Madsen's opinion, at least not without clarification from Dr. Madsen himself.[7]

III.    CONCLUSION

Based upon the foregoing, I find that the ALJ did not properly analyze and weigh the medical evidence.  Accordingly, it is

---

[7] It appears that the ALJ did give some weight to Dr. Madsen's opinion regarding Plaintiff's ability to work with others, finding "that appears to be consistent with the record as a whole" (*id.* 16-17).  Thus, the ALJ limited Plaintiff's interaction with people.  (*Id.* 14.) I find no error with this portion of the ALJ's decision.

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

Dated: September 16, 2013

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge